IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

ALTERIK ROGERS,

        Plaintiff,

   v.                                    Civil Action 2:15-cv-1877
                                         Chief Judge Edmund A. Sargus, Jr.
                                         Magistrate Judge Jolson

THE STATE OF OHIO, et al.,

        Defendants.

## REPORT AND RECOMMENDATION

    Plaintiff Alterik Rogers, a state inmate currently incarcerated at the Belmont Correctional Institution who proceeds pro se, brings suit alleging that Defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. For the reasons below, it is **RECOMMENDED** that: Defendant Fred Abdalla's motion for summary judgment be **GRANTED** (Doc. 62); Defendant City of Steubenville's and Defendant Sean Scott's motion for summary judgment be **GRANTED** (Doc. 63); Defendants' motions for judgment on the pleadings be **DENIED as moot** (Docs. 57, 58); and final judgment in this matter be entered in favor of Defendants.

### I.   BACKGROUND

**A.  Factual Background**

    On January 4, 2014, Plaintiff was arrested and taken to the Jefferson County Jail on charges of felonious assault, contempt, having a weapon while under disability, tampering with evidence, a firearm specification pursuant to Ohio Revised Code § 2941.141, and menacing by stalking. (*See* Doc. 12-1 at 1–2). On January 14, 2014, Plaintiff attended a bond hearing in the Steubenville Municipal Court. (Doc. 62-1 at 14). After the hearing, Sean Scott, an officer with

1

the Steubenville Police Department, drove Plaintiff back to the Jefferson County Jail, which was roughly a quarter mile away.  (*See id.* 14, 18; Doc. 63-1 ¶¶ 3–4).  Officer Scott placed Plaintiff in the back seat of his cruiser and did not secure Plaintiff's seat belt.  (Doc. 62-1 at 14, 17).  As Officer Scott's vehicle approached the Jefferson County Jail, he made a complete stop in front of the garage door.  (*Id.* at 41).  According to Plaintiff, once the garage door was halfway open Officer Scott drove into the port and hit "a truck or bus."  (*Id.* at 20).  Although Plaintiff did not see Officer Scott's speedometer, he estimated the car "might have hit seventeen, eighteen miles per hour."  (*Id.* at 51).  According to Officer Scott, his car "was traveling at less than 5 m.p.h." when it entered the port and "slightly touched the back bumper of another law enforcement unit." (Doc. 63-1 ¶¶ 9, 8).

      Plaintiff did not notice any damage to either vehicle.  (*See* Doc. 62-1 at 15).  According to Officer Scott's affidavit, neither vehicle sustained any damage.  (Doc. 63-1 ¶ 11).  Officer Scott was not harmed as a result of the collision.  (*Id.* ¶ 12).  Plaintiff testified that Officer Scott then pulled him out of the car and asked him if he was hurt, to which Plaintiff responded "no, I just felt a little pinch in my back."  (Doc. 62-1 at 14).  Plaintiff testified that his back felt "a little heavy" but that he "[d]idn't really care" at the time and "just brushed it off."  (*Id.* at 22). Plaintiff testified that he did not tell Officer Scott that he needed to go to the hospital (*id.* at 16–17), although he did say something to the effect of, "you know, the hospital will be okay.  I will see if they will take me to the hospital here at Jefferson County" (*id.* at 22).  Plaintiff and Officer Scott then walked into the jail.  According to Officer Scott, Plaintiff was not limping.  (Doc. 63-1 ¶ 14).

      Plaintiff testified that he was not sure exactly when Officer Scott left from the correctional facility, but that it was shortly after escorting Plaintiff inside.  (Doc. 62-1 at 23–24).

Plaintiff did, however, testify that he did not tell the corrections officer at the facility that he needed to see a doctor while Officer Scott was in the room. (*Id.* at 23). As Plaintiff progressed through the check-in process, he could not take off his jumpsuit for a security search. (*Id.* at 94). After the officer processing him conducted a pat down, Plaintiff went up a set of stairs, returned to his cell, and realized that he had defecated inside his jumpsuit, which he assumes happened in the midst of the accident. (*Id.* at 94–95).

Plaintiff began complaining of back pain later that evening to two corrections officers of the Jefferson County Jail right before going to bed. (Doc. 12-4 at 6; Doc. 62-1 at 82, 100–01). Wanda Oiler, the nurse on duty that night, received an after-hours call at 9:30 p.m. informing her that Mr. Rogers was complaining of back pain. (Doc. 62-2 ¶ 4). After confirming that Plaintiff had no bumps or bruises, Nurse Oiler advised a sergeant to provide Plaintiff with ibuprofen. (*Id.* ¶¶ 5, 8). The jail staff on duty checked on Plaintiff the remainder of the evening. (Doc. 62-1 at 101–02).

Nurse Oiler evaluated Plaintiff the following day and determined that Plaintiff's condition was not an emergency. (Doc. 12-4 at 3; Doc. 62-2 ¶ 12). After the assessment, Nurse Oiler observed Plaintiff walk up the steps without incident. (Doc. 62-2 ¶ 13). Moreover, according to Nurse Oiler, Plaintiff "was observed . . . moving all around [] in the visitation area . . . without any difficulty." (*Id.*). Plaintiff was given Tramadol for his pain. (*See id.* ¶ 15). Plaintiff's "use of Tramadol was discontinued" two days later "on January 17, 2014 after he was observed using the stairs, going to recreation, and running without difficulty." (*Id.* ¶ 16). Plaintiff did not seek any additional treatment from the Jefferson County Jail Medical Department before leaving the Jail on July 7, 2014. (*See id.* ¶ 17; Doc. 62-1 at 99).

3

Plaintiff testified that he has "permanent injuries" from the incident. (Doc. 62-1 at 62). He says he no longer can play basketball or pick up his eight-year-old daughter. He testified that a doctor whose name he did not know told him he would have arthritis in his back because of the "disregard of medical treatment." (*Id.* at 67–68). He testified further that his "whole leg goes numb sometimes." (*Id.* at 68). According to Plaintiff, he limped from the day of the accident until he left the Jefferson County Jail on July 7, 2014, still limps, and is still taking pain medication, all because of the accident. (*Id.* at 99). Plaintiff testified that he went through about six months of therapy for his back, and that he continues to do stretches to alleviate his pain. (*Id.* at 147–49).

## B. Procedural Background

On May 12, 2015, Plaintiff brought suit under 42 U.S.C. § 1983 against the State of Ohio, the City of Steubenville (the "City"), Officer Scott, Jefferson County Sheriff Fred Abdalla, and the Jefferson County Sheriff's Medical Department. (Doc. 1; *see id.* at 5 (naming Officer Scott, Sheriff Abdalla, and the Jefferson County Sheriff's Medical Department in their individual and official capacities)). Plaintiff alleged Defendants disregarded his personal safety and denied him medical treatment with deliberate indifference. (*Id.* at 5). Magistrate Judge King performed an initial screen of Plaintiff's complaint according to 28 U.S.C. §§ 1915(e) and 1915A on May 13, 2015, and recommended that the State of Ohio be dismissed. (Doc. 4). The District Judge adopted Judge King's recommendation on June 16, 2015. (Doc. 8).

The remaining Defendants filed dispositive motions soon thereafter. On December 21, 2015, Judge King recommended that the County Medical Department be dismissed. (Doc. 34). Also on December 21, 2015, Judge King recommended that the City's motion for judgment on the pleadings be denied. (Doc. 35). Although the complaint did not allege a claim for municipal

4

liability against the City of Steubenville, Plaintiff's post-complaint briefing alleges that the City had a custom of failing to secure detainees in transport and denying medical care to detainees injured in car accidents. (*Id.* at 6). Judge King therefore granted Plaintiff leave to assert specific factual allegations in support of his claim of municipal liability against the City, and required him to do so by January 11, 2016. (*Id.* at 7). The District Judge adopted Judge King's recommendations on January 21, 2016. (Doc. 38). Plaintiff did not amend his complaint. (Doc. 39 at 6).

At this stage, the City, Officer Scott, and Sheriff Abdalla remain as Defendants. On August 3, 2016, the City filed a renewed motion for judgment on the pleadings arguing that Plaintiff failed to present any basis for municipal liability. (Doc. 57). Officer Scott filed a motion for partial judgment on the pleadings that day as well, arguing that he was immune from any state-law claims Plaintiff might bring. (Doc. 58). Sheriff Abdalla filed a motion for summary judgment on August 15, 2016 (Doc. 62), and the City and Officer Scott filed a joint motion for summary judgment on August 19, 2016 (Doc. 63). On September 12, 2016, Plaintiff filed an opposition to the City and Officer Scott's motion for summary judgment. (Doc. 64).

## II.  STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the initial "responsibility of informing the district court of the basis for its motion, and identifying those portions" of the record that demonstrate "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *see id.* at

255 ("The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [her] favor." (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970))). A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248; *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (explaining that "genuine" amounts to more than "some metaphysical doubt as to the material facts"). Consequently, the central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.

### III.  DISCUSSION

#### A.  Negligence Claims

##### 1.  Sheriff Abdalla

Sheriff Abdalla does not move for summary judgment on any state-law claims that Plaintiff might bring. However, the Court does not read the complaint to bring such claims against Sheriff Abdalla in the first place. For example, while Plaintiff states in his complaint that his claims are brought pursuant to 42 U.S.C. § 1983, "a violation of state law cannot support a cause of action under § 1983." *Otworth v. Vanderploeg*, 61 F. App'x 163, 166 (6th Cir. 2003). Moreover, whereas Plaintiff did not file a brief in opposition to Sheriff Abdalla's motion for summary judgment, Plaintiff did oppose the City's and Officer Scott's motion for summary judgment and attempted to explain that, in his estimation, Officer Scott was negligent. (Doc. 64 at 1). In short, the Court finds that Plaintiff does not bring any state-law claims against Sheriff Abdalla.

### 2. Officer Scott and the City

The Court finds that Plaintiff also does not bring any state-law claims against Officer Scott and the City for the reasons stated above. Even if he did, and to the extent his briefing attempts to clarify the matter (*see* Doc. 64 at 1), it is recommended that summary judgment be granted in Officer Scott's and the City's favor based on state-law immunity.

#### a. Officer Scott

"Section 2744.03" of the Ohio Revised Code "grants immunity to employees of political subdivisions acting within the scope of their employment." *Chesher v. Neyer*, 477 F.3d 784, 796 (6th Cir. 2007) (citing Ohio Rev. Code § 2744.03(A)(6)); *see Stern v. City of Steubenville*, 137 F. App'x 820, 824 (6th Cir. 2005) (Steubenville qualifies as a political subdivision under Ohio Rev. Code § 2744.01(F)). Officer Scott was acting within the scope of his employment when he transferred Plaintiff back to the jail. (Doc. 63-1 ¶ 4). Immunity therefore applies unless Plaintiff establishes an issue of fact as to whether Officer Scott acted "with malicious purpose, in bad faith, or in a wanton or reckless manner." *Burgess v. Fischer*, 735 F.3d 462, 479 (6th Cir. 2013) (quoting Ohio Rev. Code § 2744.03(A)(6)(b)). Ohio law defines "bad faith" as acting "with a dishonest purpose," "conscious wrongdoing," or breaching "a known duty through some ulterior motive or ill will"; "wanton misconduct" as "the failure to exercise *any* care toward those to whom a duty of care is owed in circumstances in which there is great probability that harm will result"; and "reckless conduct" as "the conscious disregard of or indifference to a known or obvious risk of harm . . . that is unreasonable under the circumstances and is substantially greater than negligent conduct." *Id.* at 479–80 (quotations omitted) (emphasis in original).

Viewing the facts in a light most favorable to Plaintiff, Officer Scott came to full stop before entering the parking garage. He then proceeded into the garage at a rate of speed between

less than 5 m.p.h. (according to Officer Scott) and 17 m.p.h. (according to Plaintiff's guess given that he did not see the speedometer).  The police cruiser made contact with another vehicle inside the garage, which resulted in no injury to Officer Scott, no damage to the police cruiser, and no damage to the other vehicle in the garage.  Plaintiff has failed to put forth any evidence from which a reasonable jury could draw an inference that Officer Scott acted with bad faith.  Moreover, the record demonstrates that Officer Scott exercised some level of care—he stopped before entering the garage and checked to see if Plaintiff was hurt after the incident—meaning he is not guilty of wanton misconduct.  Finally, based upon these facts, Officer Scott's conduct is, at most, negligent and thus does not qualify as reckless.  For these reasons, it is recommended that summary judgment be granted in Officer Scott's favor with respect to any state-law negligence claim Plaintiff attempted to bring.

### b.  The City

Ohio law conveys a general grant of immunity to political subdivisions, which includes the City.  *See* Ohio Rev. Code § 2744.02(A)(1).  There are five exceptions to this general grant: (1) negligent operation of any motor vehicle; (2) negligence in the execution of a proprietary function (defined in relevant part as one that "promotes or preserves the public peace, health, safety, or welfare and that involves activities that are customarily engaged in by nongovernmental persons," *id.* § 2744.02(G)(1)(b)); (3) negligence in the maintenance of public roads; (4) negligence due to the physical defects of buildings like jails; and (5) where another section of the Ohio Revised Code imposes civil liability onto a political subdivision.  *Id.* § 2744.02(B)(1)–(5).

According to Plaintiff's claims, exceptions (1) and (2) could apply here.  However, neither ultimately does.  With respect to exception (2), Ohio Revised Code § 2744.01(C)(2), in

conjunction with § 2744.01(G)(1)(a), explicitly exempts the provision of police services from the definition of a "proprietary function." As to exception (1), the City contends that Revised Code § 2744.02(B)(1)(1)(a) applies to the facts of this case. Under that section, the city is not liable for the negligent operation of a motor vehicle if its employee was "responding to an emergency call" and did not act willfully or wantonly. As explained above, Plaintiff has not put forth evidence to support an inference that Officer Scott acted willfully or wantonly. Moreover, the Ohio Revised Code defines emergency call as: "a call to duty, including, but not limited to, communications from citizens, police dispatches, and personal observations by peace officers of inherently dangerous situations that demand an immediate response on the part of a peace officer." The Supreme Court of Ohio "has adopted a broad interpretation of 'call to duty' and stated that it include[s] situations 'to which a response by a peace officer is required by the officer's professional obligation.'" *Taylor v. Cleveland*, No. 97597, 2012 WL 3041450, at *2 (Ohio Ct. App. July 26, 2012) (quoting *Colbert v. Cleveland*, 99 Ohio St. 3d 215, 217, 790 N.E. 2d 781, 784 (Ohio 2003)). Under Ohio case law, transporting prisoners falls under this definition. *See id.* (transporting a prisoner to the hospital for medical treatment); *Rambus v. Toledo*, No. L-07-1378, 2008 WL 3878369, at *3 (Ohio Ct. App. Aug. 22, 2008) ("Applying the law as set forth in *Colbert*, we find that because Officer Shirey, in transporting prisoner Franks, was responding to a call to duty as part of his professional obligation, he was, in fact, responding to an 'emergency call' within the meaning of R.C.2744.01(A)."); (*see also* Doc. 63-1 ¶ 4 ("On January 14, 2014, while performing my usual patrol duties, I was called to transport Plaintiff Alterik Rogers back to the Jefferson County Jail following a hearing at the Steubenville Municipal Court.")).

For these reasons, it is recommended that summary judgment be granted in the City's favor with respect to any state-law negligence claim Plaintiff attempts to bring.

**B. Eighth Amendment Claim Against Officer Scott**

Plaintiff claims that Officer Scott acted with deliberate indifference to Plaintiff's medical needs in violation of the Eighth Amendment following the accident.  In response, Officer Scott invokes the defense of qualified immunity, which "protects a public official in his individual capacity from civil damages."  *Everson v. Leis*, 556 F.3d 484, 501 n.7 (6th Cir. 2009).  A claim of qualified immunity requires "a two-step inquiry to determine if (1) the defendant violated a constitutional right, and (2) if that right was clearly established."  *Smith v. Leis*, 407 F. App'x 918, 928 (6th Cir. 2011).  "The court may address these prongs in any order, and if the plaintiff cannot make both showings, the officer is entitled to qualified immunity."  *Brown v. Lewis*, 779 F.3d 401, 412 (6th Cir. 2015); *see Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

The undersigned starts with the first question.  In order to survive summary judgment, Plaintiff must establish an issue of material fact in support of his claim that Officer Scott acted with deliberate indifference to his medical needs.  Such a claim has an objective and a subjective component.  *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 895 (6th Cir. 2004).  The objective prong "requires a plaintiff to show that the medical need at issue is sufficiently serious."  *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011) (quotations omitted).  "A medical need is sufficiently serious if it has been diagnosed by a physician that has mandated treatment or it is so obvious that even a lay person would easily recognize the need for medical treatment."  *Burgess v. Fischer*, 735 F.3d 462, 476 (6th Cir. 2013).  The subjective prong requires the Court to determine whether "prison officials ha[d] a sufficiently culpable state of mind in denying medical care."  *Alspaugh*, 643 F.3d at 169.  "Under the subjective component, the plaintiff must

establish that the defendant knew of or disregarded an excessive risk to inmate health or safety." *Broyles v. Corr. Med. Servs., Inc.*, No. 08-1638, 2009 WL 3154241, at *2 (6th Cir. Jan. 23, 2009) (citing *Blackmore*, 390 F.3d at 895).

Plaintiff's claim fails on both prongs. Here, Plaintiff and Officer Scott were in a minor collision in the garage of the Jefferson County Jail. The collision resulted in no damage to either of the vehicles and no injury to Officer Scott. Officer Scott asked Plaintiff if he was hurt. Plaintiff replied that he was not. Plaintiff was not limping as Officer Scott escorted Plaintiff into the jail. Plaintiff's need for medical care was thus not so obvious that a lay person like Officer Scott should have recognized the need for medical treatment. And given that Plaintiff told Officer Scott he was not hurt, Plaintiff has failed to demonstrate an issue of material fact as to whether Officer Scott knew of or disregarded an excessive risk to Plaintiff's health. Plaintiff's Eighth Amendment claim thus fails. *See, e.g.*, *Burgess*, 735 F.3d at 477 ("Moreover, Plaintiffs have failed to establish the subjective prong: there is no evidence that Jordan knew of the need for further treatment or should have known as a result of the circumstances.")

For these reasons, it is **RECOMMENDED** that: Officer Scott is entitled to qualified immunity; Plaintiff's individual-capacity claim against Officer Scott fails as a matter of law; and Officer Scott's motion for summary judgment as to this claim be **GRANTED**.

**C. The Remaining Claims**

This leaves Plaintiff's Eighth Amendment claims against the City, Officer Scott in his official capacity, and Sheriff Abdalla in his personal and official capacities. Plaintiff's personal-capacity claim against Sheriff Abdalla fails because does not put forth evidence that Sheriff Abdalla was involved in any decisions regarding his medical treatment. *See Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008) ("Because § 1983 liability cannot be imposed under a theory

11

of respondeat superior, proof of personal involvement is required for a supervisor to incur personal liability."). Moreover, the official-capacity claims all amount to the same charge—that "a municipal policy or custom . . . caused the plaintiff's injury." *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997) ("We have consistently refused to hold municipalities liable under a theory of *respondeat superior*."); *see Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Plaintiff, however, brings no such claim because he failed to amend his pleadings to do so. (Doc. 39 at 6). Even if he did, his municipal-liability claims fail because, as explained, Plaintiff's underlying Eighth Amendment claim fails. *See Doe v. Claiborne Cty.*, 103 F.3d 495, 507 (6th Cir. 1996) ("Under *Monell*, the County . . . cannot be found liable unless the plaintiff can establish that an officially executed policy . . . leads to, causes, or results in the deprivation of a constitutionally protected right."). It is therefore **RECOMMENDED** that summary judgment be granted in Defendants' favor as to Plaintiff's remaining claims.

## IV. CONCLUSION

For the reasons stated, it is **RECOMMENDED** that: Defendant Fred Abdalla's motion for summary judgment be **GRANTED** (Doc. 62); Defendant City of Steubenville's and Defendant Sean Scott's motion for summary judgment be **GRANTED** (Doc. 63); Defendants' motions for judgment on the pleadings be **DENIED as moot** (Docs. 57, 58); and final judgment in this matter be entered in favor of Defendants.

### Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A Judge of this Court shall make a *de novo*

determination of those portions of the Report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions.  28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

IT IS SO ORDERED.


Date: October 17, 2016                    /s/ Kimberly A. Jolson
                                          KIMBERLY A. JOLSON
                                          UNITED STATES MAGISTRATE JUDGE